IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ADAM HARRIS                                                                                                     PLAINTIFF

      V.                          Civil No. 2:20-cv-02197-PKH-MEF

KILOLO KIJAKAZI[1], Acting Commissioner,
Social Security Administration                                                                      DEFENDANT

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

      Plaintiff, Adam Harris, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  42 U.S.C. § 405(g).

### I.    Procedural Background

      Plaintiff filed his application for DIB on December 18, 2014, alleging disability since July 10, 2014, due to failed laminectomy syndrome; chronic pain where the cage, plate, and screws were placed; degenerative disk disease ("DDD"); a herniated disk; anxiety disorder; manic depression/borderline bipolar disorder; and pain in his fingers, wrists, shoulders, neck, back, hips, and knees.  (ECF No. 16-3, pp. 3, 19-20; ECF No. 16-5, pp. 2-3; ECF No. 16-6, pp. 14, 31-32, 45-46).  The Commissioner denied Plaintiff's applications initially and on reconsideration.  Following

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

an administrative hearing in May 2016, Administrative Law Judge ("ALJ") Clifford Shilling issued an unfavorable decision on July 19, 2017.  (ECF No. 16-2, pp. 38-65; ECF No. 16-3, pp. 40-52).  This decision was appealed and ultimately remanded by the Appeals Council on September 25, 2018.  (*Id*. at 58-62).  On February 14, 2019, ALJ Shilling held a second administrative hearing.  (ECF No. 16-2, pp. 67-95).  Plaintiff was present and represented by counsel.

On his alleged onset date, Plaintiff was 32 years old and possessed a high school education and some college credits.  (ECF No. 16-2, p. 25).  Although he had past relevant work ("PRW") experience as a hotel clerk, housekeeper/cleaner, and laundry folder, he performed no substantial gainful activity after his alleged onset date.  (*Id*.; ECF No. 16-6, pp. 2-9, 16).

On December 17, 2019, ALJ Matthew Allen found Plaintiff's degenerative disk disease ("DDD"), obesity, carpal tunnel syndrome ("CTS"), coronary artery disease ("CAD"), affective disorder, and personality disorder to be severe impairments.  (ECF No. 16-2, p. 15).  He concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*. at 16).  The ALJ then determined the Plaintiff could still perform sedentary work where the interpersonal contact is incidental to the work performed; the complexity of the tasks is learned and performed by rote with few variables and little judgment; and the supervision required is simple, direct, and concrete.  (*Id*. at 18).  With the assistance of a vocational expert ("VE"), the ALJ found Plaintiff could perform work as a tile table worker, eye glass frame polisher, and toy stuffer.  (*Id*. at 26).

On September 1, 2020, the Appeals Council denied Plaintiff's request for review, and Plaintiff subsequently filed his Complaint to initiate this action.  (ECF No. 16-2, pp. 2-5; ECF No.

2). Both parties have now filed appeal briefs (ECF Nos. 19, 20), and the matter is ripe for resolution. The case has been referred to the undersigned for Report and Recommendation.

## II.  Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. 20 C.F.R. § 404.1520(a)(4). The fact finder only considers Plaintiff's age, education, and work experience in the light of his residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Plaintiff raises two issues on appeal: (1) whether the ALJ fully and fairly developed the record, and (2) whether the ALJ's decision complies with the Appeals Council's September 25, 2018, remand Order. Because we find that the ALJ failed to properly develop the record, we will not address Plaintiff's second issue.

Plaintiff contends the ALJ breached his duty to fully develop the record by failing to obtain more recent RFC assessments to accurately determine the level of work activity Plaintiff could perform, given his severe impairments. More specifically, he argues that the ALJ relied on RFC assessments conducted in 2015, some four years prior to his 2019 decision, despite more recent evidence indicating that the Plaintiff's condition had deteriorated. Our review of the record supports the Plaintiff's contention.

The ALJ owes a duty to a claimant to develop a reasonably complete record to ensure his decision is informed and based on sufficient facts. *See Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (citing *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). While "[a]n ALJ should

recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted). There is, however, no requirement that the ALJ's findings directly mirror a particular report, form, or opinion. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (ALJ not required to rely entirely on a particular physician's opinion).

In the present case, the record contains treatment records from Plaintiff's treating physician and specialists; the results of objective tests; assessments completed by examining and non-examining consultants; and hospital records documenting emergency room ("ER") visits, surgical procedures, and admissions. These records document Plaintiff's history of treatment for DDD in the lumbar spine, coronary artery disease ("CAD") status post myocardial infarction and stent placement, morbid obesity, and bilateral carpal tunnel syndrome ("CTS"). An MRI conducted in 2005 revealed disk bulging and dessication at the L4-L5 and L5-S1 levels that culminated in surgery to fuse the L4-5 level vertebrae in April 2009. (ECF No. 16-8, pp. 46, 48-49, 53). Unfortunately, his presurgical radicular back pain and weakness returned the following month, prompting neurosurgeon, Arthur Johnson, M.D., to prescribe an epidural steroid injection. (*Id*. at 59-63, 65, 68-75). It does not, however, appear that the injection was successful as additional injections were not ordered. (*Id*. at 76). Thereafter, Plaintiff's primary care physician ("PCP"), Dr. Mark Rogow, managed his back pain with narcotics until he began seeing Dr. Margaret Cox in July 2016, and then later established with Dr. Regina Thurman in February 2017. (*Id*. at 98; ECF No. 16-9, pp. 12-28; ECF No. 16-16, pp. 92-95). Although he reported that the pain medications prescribed allowed him to perform his activities of daily living ("ADLs"), he

continued to experience significant radicular back pain and suffered several falls in March 2015. (ECF No. 16-7, p. 27). *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (holding that "the Commissioner erroneously relied too heavily on indications in the medical record that [the claimant] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.").

In July 2015, the Plaintiff was hospitalized for three days after experiencing significant chest pain, mild shortness of breath, and a severe headache, both on exertion and at rest. (ECF No. 16-7, pp. 40-47, 52-111). A cardiac catheterization revealed high-grade disease with 100 percent thrombotic occlusion at the junction of the mid and distal right coronary artery ("RCA") with borderline disease in the left anterior descending artery ("LAD"). (ECF No. 16-7, pp. 37-38). Cardiologist, Ayhan Zia, M.D., diagnosed a likely non-ST elevation myocardial infarction status post cardiac catheterization with stent placement, leukocytosis, stable hypertension, stable dyslipidemia, stable bipolar disease, chronic pain, tobacco abuse, and morbid obesity. Further, he prescribed Norvasc, Abilify, Aspirin, Atorvastatin, Valium, Prozac, Lisinopril, Metoprolol, Oxycodone, and Pantoprazole.

Three days later, he followed up with Dr. Rogow. (ECF No. 16-7, p. 152; ECF No. 16-9, p. 8). An exam revealed tenderness in the lumbosacral paraspinal muscles and a decreased range of motion ("ROM"). Therefore, Dr. Rogow prescribed Norvasc and Oxycodone.

On August 16, 2015, Dr. Clifford Evans conducted a general physical exam of the Plaintiff. (ECF No. 16-7, pp. 7-12). Dr. Evans noted he was unable to perform the ROM and limb function exams because he had become extremely emotional during the medical history portion of the exam. He did, however, note some general muscle weakness and the need to use an assistive device when walking. Accordingly, Dr. Evans diagnosed post laminectomy syndrome, schizophrenia, obesity,

DDD of the entire spine, and major depression. He then assessed severe limitations to the whole body due to depression, residual pain from the laminectomy, and schizophrenia.

On October 30, 2015, Dr. Rogow treated Plaintiff for complaints of pain and tingling in his left leg. (ECF No. 16-8, p. 6). Noting no changes in his physical exam, the doctor renewed his pain medication prescription.

In December, he presented in the ER with complaints of chronic chest pain since July. (ECF No. 16-8, pp. 10-43). After a negative cardiac stress test, it was determined that his symptoms were most likely musculoskeletal in nature.

When the Plaintiff returned to Dr. Rogow's office on December 30, 2015, he complained of persistent back pain, which he rated as a 7 on a 10-point scale. (ECF No. 16-8, p. 4). Noting no changes in his physical exam, Dr. Rogow refilled his Oxycodone.

In April 2016, Plaintiff received a letter indicating he had violated his controlled substance contract. (ECF No. 16-8, p. 3). The record does not, however, provide any information concerning the violation. There are, however, no other notations in the record to suggest the Plaintiff was misusing or abusing his medications. After rating his lower back, left leg, and ankle pain as an 8/10, Dr. Rogow provided him with the names of four local pain specialists. He also prescribed Wellbutrin to treat his generalized anxiety disorder.

An August 2016 MRI of his lumbar spine revealed postoperative changes at the L4-5 level with a mild broad-based disk bulge at the L5-S1 level, more prominent on the right than the left. (ECF No. 16-9, pp. 44-45; ECF No. 16-15, pp. 59-60).

In February 2017, Dr. Thurman increased the Plaintiff's Hydrocodone dosage due to chronic pain in the middle and lower back. (ECF No. 16-16, pp. 92-95). And, the following month, he suffered a fall. (ECF No. 16-16, pp. 96-99). On exam, he continued to exhibit

tenderness to palpation in the paraspinal musculature of the lumbosacral spine, so Dr. Thurman added Hysingla ER. She then increased his Hysingla dosage on May 1 and renewed his Hydrocodone. (ECF No. 16-16, pp. 104-107).

On August 16, 2017, Plaintiff complained of bilateral hand and finger numbness, occasional chest pain, and elevated blood pressure. (ECF No. 16-15, pp. 46-48). Dr. Cox ordered nerve conduction studies that revealed bilateral sensory neuropathy and CTS. (ECF No. 16-15, pp. 66-67). These findings were bolstered by x-rays of his hands in November, showing a mild degree of CTS bilaterally. (ECF No. 16-15, p. 102).

On December 12, Plaintiff consulted with orthopedist, Trent Johnson, M.D., for complaints of numbness and tingling in his hands at night and during the day. (ECF No. 16-15, pp. 98-99). He had tried night splinting to no avail. An exam revealed carpal tunnel compression, slightly worse on the left, and mildly decreased sensation in the medial nerve distribution. X-rays revealed no acute fractures or dislocations with a mild degree of CTS bilaterally. After discussing his treatment options, Dr. Johnson decided to proceed with steroid injections and night splinting.

On January 11, 2018, a repeat heart catheterization with selective coronary arteriography revealed mild to moderate CAD and elevated left ventricle filling pressure. (ECF No. 16-15, pp. 72-96; ECF No. 16-16, pp. 71-72). Cardiologist, Andres Vargas, M.D., diagnosed mild systemic disease (ASA Class 2) and increased his dosage of Isordil. At that time, x-rays of his hands again revealed a mild degree of bilateral CTS. (ECF No. 16-15, p. 102).

In March, Plaintiff rated his back pain as a 7/10 and continued to exhibit tenderness in the lumbosacral spine. (ECF No. 16-16, pp. 120-124). Dr. Gaines continued his medications without change.

On December 6, 2018, Plaintiff returned to Dr. Trent Johnson for complaints of worsening right hip pain and numbness and tingling in his hands. (ECF No. 16-15, pp. 100-101). Although nonoperative management of his CTS had initially proven helpful, his symptoms continued to progress. He was now dropping things and experiencing increased symptoms when performing repetitive activities and holding his wrists in a static position. He exhibited positive Tinel's and carpal tunnel compression tests over the median nerve, decreased sensation in the median nerve distribution, and tenderness to palpation about the trochanter bursa. However, x-rays of his hips were unremarkable. (*Id*. at 104). Dr. Johnson recommended physical therapy with iliotibial band stretching, hip girdle and core strengthening, and left carpal tunnel release.

An MRI of Plaintiff's lumbar spine conducted on December 11, 2018, showed stable postoperative change at the L4-5 level, spondylitic ridging at the L5-S1 level with right sided disk protrusion, and stable right lateral recess narrowing. (ECF No. 16-16, pp. 87-90).

On March 6, 2019, Dr. Trent Johnson performed left CTS release. (ECF No. 16-17, pp. 3-82). At a post-surgical follow-up on April 15, he recommended right CTS release. (*Id*. at 100-103). That surgery was performed on April 17, 2019. (*Id*. at 103-142; ECF No. 16-18, pp. 2-26).

The ALJ admitted to giving great weight to the 2015 assessments of the state agency physicians, finding them to be consistent with the longitudinal objective medical records. He also noted that later submitted records supported a finding that Plaintiff's CTS was a severe impairment. However, he failed to account for this impairment in his conclusion that the Plaintiff could perform a full range of unskilled, sedentary work.

The only RFC assessments in the record were completed by state agency physicians in April and September 2015, finding the Plaintiff capable of performing a full range of sedentary work. (ECF No. 16-3, pp. 11-12; 30-31). Unfortunately, these non-examining physicians were

9

not able to review any of the evidence dated after their assessments, which now makes up the bulk of the 1,859-page transcript. And, as previously mentioned, Dr. Evans performed a general physical exam in August 2015 but was unable to conduct most of the exam due to Plaintiff's emotional state. Moreover, records dated after these assessments indicate that the Plaintiff continued to experience chronic radicular back and chest pain and was later diagnosed with bilateral CTS requiring surgical correction.

For these reasons, the undersigned finds that the ALJ's reliance on the 2015 non-examining physician opinions is not supported by the overall record. The ALJ should have obtained more recent medical opinions as to the Plaintiff's ability to perform work activity, given all his impairments. *See Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008) (holding an ALJ must not substitute his opinions for those of the physician); *see also Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009) (noting that ALJs may not "play doctor"). Because he failed to do so, remand is necessary to allow the ALJ to further develop the record.

Accordingly, on remand, the ALJ should order a consultative orthopedic exam, complete with an RFC assessment documenting Plaintiff's ability to sit, stand, walk, crouch, crawl, stoop, and use his hands, fingers, and wrists for repetitive actions. *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992) (person would need to stoop only occasionally to perform substantially all sedentary and light jobs); SOCIAL SECURITY RULING 96-9P, 1996 WL 374185, *8 (1996) ("Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions."). The assessment should also account for any limitations resulting from Plaintiff's heart condition and morbid obesity.

Additionally, the record does contain some evidence of professional mental health treatment, in addition to Plaintiff's PCP providing regular prescriptions of

antidepressants/antianxiety medications.  On December 7, 2015, Plaintiff underwent a diagnostic evaluation at Valley Behavioral for complaints of severe depression complicated by his physical problems.  (ECF No. 16-7, pp. 170-179).  He reported suicidal ideations with no plan or intent; a history of childhood sexual abuse by a developmentally delayed cousin and his sister's boyfriend; and difficulty accepting his own homosexuality because it did not align with his religious beliefs. On exam, license professional counselor, Susan Smith noted him to be fully oriented and cooperative with a depressed and dysphoric mood, flat affect, intact and appropriate thought processes, fair insight and judgment, slow/lethargic motor activity, intact memory, and normal speech and attention/concentration.  She identified difficulty verbalizing thoughts/feelings and a short attention span as potential barriers to treatment.

Following a consultative mental exam on June 11, 2015, Dr. Patricia Walz also opined that Plaintiff's social skills would be impaired by his irritability, his depression would interfere with his concentration, he would be likely to give up easily, and that his speed of information processing would be slow.  (ECF No. 16-7, pp. 14-18).  The ALJ, however, dismissed Dr. Walz's opinion because he found that it was not supported by either her examination of the Plaintiff or the overall record.  Given that fact that Dr. Walz's opinion does appear to align with the opinion of Plaintiff's counselor, we also find that the record requires further development regarding the status of Plaintiff's mental health.  Accordingly, on remand, the ALJ is directed to order a consultative mental examination to further develop the record concerning Plaintiff's mental impairments.

## IV.     Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of January 2022.

/s/ *Mark E. Ford*
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE